# In the United States Court of Federal Claims

No. 18–1340

(Filed: 13 November 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| HAVIV YIFRACH, | \* | |
| | \* | |
| Plaintiff, | \* | Breach of Contract; Actual Authority of |
| | \* | Government Agents; Motion to Dismiss; |
| v. | \* | Confidential Informant; RCFC 12(b)(6). |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Kenneth Foard McCallion*, McCallion & Associates LLP, New York, NY, for plaintiff.

*Steven Michael Mager*, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE**, **Judge**.

This matter concerns an alleged agreement between plaintiff and the Federal Bureau of Investigation ("FBI"). Plaintiff alleges the government promised to provide him compensation and protection in exchange for his services as an undercover informant during the FBI's investigation of an Israeli criminal organization in the United States. Plaintiff provided information that "led to the arrest and successful prosecution of dozens of members of the [o]rganization." Compl. ¶ 58. Plaintiff claims the government breached an alleged agreement, as well as the implied duty of good faith and fair dealing, by failing to provide various benefits FBI officials promised him. The government denies the existence of the agreement and maintains even if there was a written agreement, the government representatives who allegedly signed the agreement did not have actual authority to contract on behalf of the government, and the agreement is thus not enforceable.

The government moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), or in the alternative, for summary judgment. For the following reasons, the Court **GRANTS** the government's motion to dismiss.

**I.     Background**

### A. Factual History

The Court draws the following facts from plaintiff's complaint and assumes for the purposes of this motion all alleged facts are true. *See, e.g., Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000) (stating when ruling on a motion to dismiss for failure to state a claim, this Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the nonmovant's] favor").

Plaintiff Haviv Yifrach, an Israeli citizen, responded to an Israeli newspaper advertisement for employment with an Israeli organization in the United States. Compl. ¶ 4. Following an interview, the organization offered plaintiff a position working on slot machines in the United States, assuring him the work was legal. *Id.* ¶ 5. In January 2012, plaintiff flew from Israel to Los Angeles, where the director of the organization's Phoenix business operations met him. *Id.* ¶ 6. A few days later, plaintiff traveled to Phoenix, Arizona, where he began supplying slot machines to gas stations and stores, as well as collecting revenues from those machines and transferring them to higher echelons of the organization. *Id.* ¶ 7. Plaintiff soon realized, despite what the organization initially told him, the organization's work was illegal, and he reported this information to the FBI. *Id.* ¶¶ 8–9. Shortly thereafter, two law enforcement agents named Mike and Christian, along with an Arizona State Police official, informed plaintiff they intended to work with him as an undercover informant. *Id.* ¶¶ 12–16.

Beginning in February 2012, plaintiff provided information about the criminal organization to the FBI agents and other law enforcement officials. Compl. ¶¶ 17–18. Plaintiff alleges when the FBI realized how valuable plaintiff was and how much the undercover work endangered him, the FBI agreed to make him a "special contract employee and agent," being referred to as an "undercover 'special agent.'" *Id.* ¶ 19. The FBI allegedly made numerous promises to plaintiff in exchange for his undercover services. *See id.* ¶¶ 19–20. Plaintiff alleges the FBI promised, among other things: $7,500 "tax free" every two weeks; two apartments, two rental cars, a kosher food allowance, and U.S. citizenship for plaintiff and his wife; reasonable protection and security for him and his family; and, at the conclusion of the investigation, a $2.5 million lump sum payment "tax free," a mansion, and two cars, all from assets seized during the investigation. *Id.* ¶¶ 19–20, 25. The FBI agents allegedly promised to "mak[e] good-faith 'best efforts'" to apply for, recommend and/or support an award under the Dept. of Justice's Forfeiture Guidelines of an award to Plaintiff of 20% of the value of the forfeited assets of the Organization that were collected by the U.S. Dept. of Justice's Forfeiture Program." *Id.* ¶ 58.

In March 2012, the FBI agents whom plaintiff worked with notified him the "terms of his contract with the FBI had been approved by higher-ups within the FBI and the Department of Justice," and "the FBI would like him to participate in a meeting at the FBI field office in Phoenix to finalize a formal agreement with him." *Id.* ¶ 22. The next day, plaintiff alleges he met with "several agents and governmental representatives, Mike [an FBI field agent], Christian [a special agent of the California Department of Justice], a representative of the U.S. Dept. of Justice, 'Rebecca' (another federal agent), and Mark Brnovich, who was identified as the Director of the Arizona Department of Gaming" at the Phoenix FBI office. Compl. ¶ 23. A Hebrew-English translator was also allegedly present at the meeting to ensure plaintiff, a native Hebrew speaker, understood the terms of the agreement. *Id.* Plaintiff and "all of the various U.S

Dept. of Justice and other law enforcement agents who were present at the meeting" signed the agreement. *Id.* ¶ 26. After signing, plaintiff asked for a copy of the agreement, "but was told that, 'for his own good,' and in the interests of the security of Plaintiff and his family, the original and any copies of the agreement should stay with the FBI and Dept. of Justice." *Id.* ¶ 27.

Shortly after signing the agreement, plaintiff flew back to Israel to bring his wife to the United States. *Id.* ¶ 28. On 27 March 2012, plaintiff and his wife flew to the United States. *Id.* ¶ 29. Around that time, they settled into an apartment in Tempe, Arizona. *See id.* ¶ 34. Plaintiff thereafter regularly met with FBI agents, one of whom gave plaintiff $7,500 cash every two weeks, "in accordance with Plaintiff's employment agreement." Compl. ¶ 35.

By the end of August 2012, the criminal organization suspected plaintiff was providing information to the FBI. *Id.* ¶ 41. Plaintiff informed FBI agents of these suspicions, but they reassured plaintiff "he had nothing to worry about." *Id.* ¶ 43. Soon afterward, however, the criminal organization directed plaintiff to fly to New York to "shift gears." *Id.* ¶ 45. While there, plaintiff met with senior members of the criminal organization. *See id.* ¶ 48. They reported they knew plaintiff was working with law enforcement as an informant, severely beat him, and took everything in his possession—including his clothing—leaving only his watch and Israeli passport. *See id.* ¶¶ 50–53.

Following this incident, in September 2012, plaintiff and his wife returned to Israel for their safety. Compl. ¶ 55. Plaintiff continued to provide information to the FBI, but the FBI discontinued payments to him. *Id.* ¶¶ 56–57.

### B. Procedural History

Plaintiff filed his complaint on 31 August 2018. *See* Compl. In response, on 28 February 2019, the government filed its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Def.'s Mot."), ECF No. 11.[1] On 29 April 2019, plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Pl.'s Resp."), ECF No. 14.[2] The government filed its Reply to Plaintiff's Response

---

[1] In support of its motion for summary judgment in the alternative, the government provided three declarations from FBI officials and an excerpt of the FBI Confidential Human Source Policy Implementation Guide. *See* App. to Def.'s Mot. These declarations and the excerpt detail the FBI's process for entering a contract with a confidential informant, which the government contends was not followed in plaintiff's case, and that the government has no record of any written contract with plaintiff. *See generally id.* The Court excludes these items in resolving the motion to dismiss. *See* RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56.").

[2] In response to the government's motion for summary judgment in the alternative, plaintiff appended two declarations: one from himself, and one from former Lieutenant and Manager of the Gaming Intelligence Unit of the Arizona Department of Gaming, Reynolds "Ray" Nejo. *See* Pl.'s Resp., Exs. 1–2. Plaintiff's declaration is in substance nearly identical to the complaint. *Compare* Compl. *with* Pl.'s Resp., Ex. 1 (Pl.'s Decl.). Lt. Nejo's declaration summarizes his experience working with plaintiff as an informant. *See* Pl.'s Resp., Ex. 2. Plaintiff also presents several emails exchanged between him and Christian, a special agent of the California Department of Justice, concerning payments and coordinating travel, as well as photographs of text messages on a smartphone screen between plaintiff and an unidentified government official regarding plaintiff's informant activities. *See id.*

to Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Def.'s Reply"), ECF No. 17, on 20 May 2019.  On 29 July 2019, this case was reassigned to the undersigned Judge.  Order, ECF No. 18.  Neither party requested oral argument.  On 20 September 2019, the Court convened a lengthy telephonic status conference in which this matter was discussed in great detail.  *See* Order, ECF No. 20.

## II. Jurisdiction

"[S]tanding is a threshold jurisdictional issue." *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998)).  "The Court of Federal Claims, though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) (citation omitted).  "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "Because Article III standing is jurisdictional, this court must consider the issue sua sponte even if not raised by the parties." *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1289 (Fed. Cir. 2007).  *Cf. Innovative Element, LLC v. United States*, 140 Fed. Cl. 743, 747 n.4 (2018) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997)) (summarizing the standard for Article III standing and noting, "[a] court may assume that a plaintiff has standing to address" a motion to dismiss).

Neither party addressed plaintiff's standing to sue the United States as an Israeli citizen; thus, the Court must address plaintiff's standing *sua sponte*.  Congress waived the government's sovereign immunity to suits brought by foreign plaintiffs through the Reciprocity Act, 28 U.S.C. § 2502, providing "[c]itizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the United States Court of Federal Claims if the subject matter of the suit is otherwise within such court's jurisdiction."  In another case, this Court addressed Israeli citizens' standing to sue the United States in this Court.  *See Gal-Or v. United States*, 113 Fed. Cl. 540, 551 (2013).  In that case, plaintiffs "provided the court with a list of agreements, treaties, [and] memoranda of understanding between the United States and Israel . . . to demonstrate reciprocity."  *Id.* at 550.  Based on the Treaty of Friendship, Commerce, and Navigation between the United States and Israel, as well as the Court's independent research, the Court in *Gal-Or* found "to the extent that all Plaintiffs are citizens of Israel, the requirements of the Reciprocity Act have been met."  *Id.* at 551.  In this case, although plaintiff did not plead allegations to demonstrate his standing under the Reciprocity Act, for the purposes of resolving this motion, the Court assumes plaintiff has standing to bring this suit.

## III. Standard of Review

---

Exs. A–B.  Plaintiff additionally appends to his response other items:  receipts; photographs of a watch, batteries, and unidentifiable objects; handwritten notes in Hebrew language; and various unrecognizable documents.  *See id.* Exs. C–Q.  As with the government's appendix, the Court excludes plaintiff's appendix in resolving the motion to dismiss.

In deciding a RCFC 12(b)(6) motion to dismiss, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). To survive a RCFC 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This principle is "inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

In a prior confidential informant case, another judge on this Court clarified the pleading standard for breach of express or implied-in-fact government contracts. *See Marchena v. United States*, 128 Fed. Cl. 326, 333–34 (2016), *aff'd*, 702 F. App'x 988 (Fed. Cir. 2017) (mem.). A confidential informant plaintiff "must sufficiently plead the elements of a contract with the United States," including "actual authority on the part of the government's representative to bind the government." *Id.* at 333 (internal quotation omitted) (quoting *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009)). Consistent with the *Twombly* and *Iqbal* pleading standard, plaintiffs must plead enough facts to make it plausible a government representative with contracting authority entered the alleged contract. For example, in *Marchena*, this Court found the complaint "[did] not meet the plausibility standard articulated in *Iqbal*" because the plaintiff failed to allege the name and official roles of the "superiors and other [g]overnment [a]gents" who allegedly had authority. *Id.* at 333–34. In another prior informant case, this Court emphasized that the *Twombly* standard replaced the "[pre-2007] *Conley* standard," as set forth and applied in *Sommers Oil Co. v. United States*, 241 F.3d 1375 (Fed. Cir. 2001). *Sahagun-Pelayo v. United States*, No. 13–929, 2014 WL 3643471, at *3 (Fed. Cl. July 22, 2014) (citing *May v. United States*, 80 Fed. Cl. 442, 446 (2008)). Additionally, in the complaint plaintiffs must identify the source of the government official's alleged authority, as discussed below. *See Marchena*, 128 Fed. Cl. at 334.

**IV.  Discussion**

Pending before the Court is the government's motion to dismiss, or in the alternative, motion for summary judgment. The parties attached appendices to their briefs for the purposes of summary judgment. In another confidential informant case, *Mendez v. United States*, 121 Fed. Cl. 370, 385 (2015), this Court converted the government's motion to dismiss to one for summary judgment because "the parties rel[ied] extensively on the contents of the exhibits and affidavits appended to their briefing to support their Rule 12(b)(6) arguments, such that the court cannot consider the merits of their arguments without considering the affidavits and documents themselves." In this case, however, the parties rely on plaintiff's complaint in supporting their

5

arguments on the motion to dismiss, and plaintiff did not seek leave to amend his complaint. Accordingly, the Court resolves the motion to dismiss while excluding the parties' declarations and other exhibits from consideration.

### A. Applicable Law

To state a claim for a government breach of contract, a plaintiff must plausibly allege the existence of a contract with the United States, which requires: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government." *Biltmore Forest Broad. FM, Inc.*, 555 F.3d at 1380 (citation omitted). These requirements are the same whether the plaintiff alleges an express or implied contract. *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). One who enters into an agreement with the United States "takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Id.* (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). Moreover, plaintiffs have the burden of demonstrating the relevant government representative had actual authority to enter the alleged contract. *See, e.g.*, *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998) ("The burden was on [plaintiff] to prove that the [contracting officer] had the authority to enter into the . . . contract."); *see also Doe v. United States*, 48 Fed. Cl. 495, 501 ("The plaintiff bears the burden of proof with respect to the government agent's authority to enter into a contract on behalf of the government."). Further, "the government is not bound by the acts of its agents beyond the scope of their actual authority." *Id.* A plaintiff's belief that a government representative has authority is "irrelevant." *Id.* "Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, *regardless of the agent's representations*." *Doe v. United States*, 100 F.3d 1576, 1584 (Fed. Cir. 1996) (emphasis added) (citing *Fed. Crop Ins. Corp.*, 332 U.S. at 383). Government agents must have actual authority to bind the government because "federal expenditures would be wholly uncontrollable if Government employees could, of their own volition, enter into contracts obligating the United States." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).

A government representative may have express or implied authority to contract. *See Salles v. United States*, 156 F.3d 1383, 1384 (Fed. Cir. 1998). "A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *McAfee v. United States*, 46 Fed. Cl. 428, 435 (2000) (citing *Garza v. United States*, 34 Fed. Cl. 1, 17 (1995)), *appeal dismissed*, 243 F.3d 565 (Fed. Cir.) (unpublished table decision). A government representative's authority is "generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) (quoting J. Cibinic & R. Nash, *Formation of Government Contracts* 43 (1982)). "The word integral has been interpreted to mean 'essential' or 'necessary to form a whole.'" *Roy v. United States*, 38 Fed. Cl. 184, 189 (1997) (quoting *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 61 (1996)), *appeal dismissed*, 124 F.3d 224 (Fed. Cir.) (unpublished table opinion). "[Contracting] [a]uthority is integral 'when the government employee could not perform his or

her assigned tasks without such authority.'" *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016) (quoting *Flexfab, LLC v. United States*, 62 Fed. Cl. 139, 148 (2004), *aff'd*, 424 F.3d 1254 (Fed. Cir. 2005)). Contracting authority is also integral "when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citing *Leonardo v. United States*, 63 Fed. Cl. 552, 557 (2005), *aff'd*, 424 F.3d 1254 (Fed. Cir. 2005)). "[A] person with no actual authority may not gain actual authority through the court-made rule of implied actual authority." *Cal. Sand & Gravel, Inc. v. United States*, 22 Cl. Ct. 19, 27 (1990), *aff'd*, 937 F.2d 624 (Fed. Cir. 1991) (per curiam), *cert. denied* 502 U.S. 1057 (1992).

This Court has found multiple times in the past that "contracting authority is not an integral part of the duties of federal law enforcement officers when dealing with confidential informants or cooperating witnesses since such officers can obtain authority from higher-ranking officers via established procedures to pay informants and witnesses for their services, with the result that contracting authority is not needed for the agents to perform their jobs." *Gary v. United States*, 67 Fed. Cl. 202, 214 (2005); *see also Roy*, 38 Fed. Cl. at 190 (1997) ("Because contracting authority is not integral to FBI [Special Agents'] informant responsibilities, the doctrine of implied actual authority is inapplicable to the facts of the case at bar.").

### B. The Parties' Arguments

In Count I of the complaint, plaintiff claims the government breached an express contract and the implied covenant of good faith and fair dealing by failing to provide plaintiff promised remuneration, adequately protect plaintiff from harm, and recommend plaintiff for a forfeiture award. *Id.* ¶¶ 68, 71–72. In Count II, plaintiff claims the government breached an implied contract and the implied covenant of good faith and fair dealing for the same reasons. *Id.* ¶¶ 75, 78–79. Plaintiff alleges in addition to the express contract, the parties formed a contract "implied from their conduct, the circumstances surrounding their relationship, and their tacit understanding of the terms of such Implied Contract." *Id.* ¶ 75. Plaintiff cites to Attorney General Reno's Confidential Informant Guidelines and the statutes establishing the Asset Forfeiture Fund as purported authorization for payments allegedly due to him. *Id.* ¶¶ 59–60, 62. Plaintiff seeks damages in an amount to be determined at trial. *Id.* ¶¶ 73, 88, at 13 ("wherefore" clause).[3]

In its motion to dismiss, the government argues plaintiff's complaint fails to plausibly allege he had a valid contract with the United States for several reasons. *See* Def.'s Mot. at 7–21. First, none of the individuals who allegedly attended the FBI meeting had express contracting authority, and plaintiff did not allege any source of such authority. *Id.* at 9–15. Next, those individuals did not have implied contracting authority either; the government notes this Court has repeatedly found law enforcement agents do not have implied contracting authority. *Id.* at 15–17. Further, the government argues plaintiff did not demonstrate any government official with contracting authority ratified the alleged agreement. *Id.* at 17–19.

---

[3] The Court notes counsel for plaintiff has brought two similar claims before this Court; in both cases, this Court held in favor of the government. *See, e.g.*, *Mendez*, 132 Fed. Cl. at 59 (2017) (dismissing on statute of limitations grounds); *Marchena*, 128 Fed. Cl. at 334–35 (dismissing for failure to plausibly allege authority to contract).

Plaintiff responds to the government's motion by arguing he plausibly demonstrated a valid contract existed between plaintiff and the United States. Pl.'s Resp. at 6–7. Plaintiff argues he established mutuality of intent to contract, consideration, and unambiguous offer and acceptance. *Id.* On the authority issue, plaintiff argues his complaint "credibly represented that the FBI agents and DOJ attorney that he dealt with and who were present when the written agreement was signed expressly represented to him that the terms of the agreement had been approved by 'higher-ups' in the FBI and Justice Department," upon which plaintiff relied. *Id.* at 8; *see also* Compl. ¶ 22. Plaintiff further argues because the government representatives told him they received approval from their superiors, they were accordingly authorized to enter the contract, claiming this was a permissible delegation of contracting authority. Pl.'s Resp. at 12. Plaintiff claims if these representatives—whose identities plaintiff says the government "has undoubtedly already obtained"—did not have contracting authority, the government would have submitted a declaration to that effect. *Id.* at 13. Plaintiff further states he "does not make any claims of 'ratification' after-the-fact by unnamed higher-ups in the DOJ." *Id.* at 14.

In its reply, the government observes plaintiff expressly abandoned his ratification argument. Def.'s Reply at 5. *Compare* Compl. ¶ 61 ("The FBI agents and federal prosecutors . . . ratified said agreement"), *with* Pl.'s Resp. at 14 ("[T]he Complaint and plaintiff's declaration does not make any claims of 'ratification' after-the-fact").[4] The government further contends plaintiff's argument—namely, the alleged agreement was "prospectively ratified" by the unnamed "higher ups," who allegedly delegated their contracting authority to the FBI agents—is "unsupported by any law or regulation." Def.'s Reply at 5.

### C. Analysis

Plaintiff alleges he entered an express contract, or alternatively, an implied-in-fact contract with the United States. Compl. ¶¶ 68, 75. Accordingly, to state a claim upon which relief may be granted, plaintiff must plausibly allege each element of a contract with the United States. As previously stated, those elements are "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government." *Biltmore Forest Broad. FM, Inc.*, 555 F.3d at 1380 (citation omitted). The government argues plaintiff does not plausibly allege the government representatives who signed the contract had the requisite actual authority to contract on behalf of the government. The Court must therefore decide whether the allegations in the complaint are "plausible on [their] face" to state the government officials who signed the alleged agreement possessed actual contracting authority. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" (emphasis added)).

This case presents similar facts and issues to those in *Marchena v. United States*, 128 Fed. Cl. 326 (2016), *aff'd*, 702 F. App'x 988 (Fed. Cir. 2017) (mem.). In that case, the plaintiff, who was also a confidential FBI informant, likewise asserted a breach of contract claim against the government for its alleged failure to recommend a forfeiture award pursuant to an alleged contract. *Id.* at 329. There, the plaintiff alleged two named FBI agents had "apparent and actual authority" to orally promise the plaintiff "they would use their best efforts to

---

[4] The Court therefore does not address the ratification argument.

'obtain/recommend/support' an award to Marchena from any asset seizure." *Id.* The plaintiff also alleged the two FBI agents' "'superiors and other Government agents,' including an Assistant United States Attorney . . . 'with the actual authority to bind the Government,' ratified the agreement with Marchena." *Id.* This Court explained because "[t]he superiors' and agents' official roles [were] not named," it was "impossible to determine whether they had actual authority or not." *Id.* at 334. Moreover, this Court stated that plaintiff's "vague claims that 'superiors and other Government agents' ratified his agreement do not meet the plausibility standard articulated in *Iqbal*." *Id.* at 334. *Iqbal* requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Under this standard, the *Marchena* court held plaintiff failed to state a claim because "pleading that certain officials had actual authority is a legal conclusion that this Court is not bound to accept as true." *Marchena*, 128 Fed. Cl. at 333–34 (citing *Iqbal*, 556 U.S. at 679); *see also Sahagun-Pelayo v. United States*, 602 F. App'x 822, 825–26 (Fed. Cir. 2015) (per curiam) (affirming this Court's dismissal for failure to state a claim where alleged informant did not identify by name or by agency the government officials who he alleged had actual authority to enter the alleged agreement and "vague allegations" of meeting with unnamed government officials did not rise to the level of plausibility required to state a claim under *Iqbal*).

       In this case, plaintiff alleges "[t]he FBI agents and federal prosecutors who were signatory parties to the agreement with Plaintiff, and/or authorized and/or ratified said agreement, had express and implied actual authority to use good faith best efforts to apply for, recommend and/or support an award to Plaintiff under the Guidelines." Compl. ¶ 61. At the onset, the Court notes plaintiff states the agents' authority was to "*use good faith best efforts* to apply for, recommend and/or support an award," not that the agents had authority themselves for contracting. *Id.* (emphasis added). At best, plaintiff alleged the agents had authority to make a future promise regarding "an award," not authority to enter the contract he alleges the government breached. As this Court observed in *Marchena*, "[l]ogically speaking, the Government cannot promise to use *best efforts* to get [plaintiff] an award pending Government approval of the award." *Marchena*, 128 Fed. Cl. at 334 (emphasis added). Further, this Court has followed Federal Circuit precedent in other confidential informant cases, finding government officials' promises "to use 'best efforts' to help [plaintiff] does not translate into a firm promise by the Government because higher officials with actual authority needed to ratify the agreement." *Id.* at 334. In another case, this Court found a Drug Enforcement Administration ("DEA") agent did not bind the government where he merely promised plaintiff "to use his best efforts to obtain commissions . . . that would only be paid upon approval of high-level officials." *SGS-92-X003 v. United States*, 85 Fed. Cl. 678, 705 (2009). Therefore, even assuming the "FBI agents and federal prosecutors" had authority to contract with plaintiff, to the extent some of plaintiff's allegations of promises were with "good faith best efforts," this is only a future promise. Compl. ¶ 61.

       Plaintiff's allegation that "FBI agents and federal prosecutors . . . had express and implied authority to use good faith best efforts to apply for, recommend and/or support an award to Plaintiff under the Guidelines," *id.*, is comparable to the allegation of authority which failed in *Marchena*. *Cf. Marchena*, 128 Fed. Cl. at 333 ("Marchena alleges that Shanks, O'Bannon,

9

AUSA Gonzalez, and 'their superiors and other Government Agents' all had actual authority and ratified Marchena's agreement with the Government."). As this Court stated in that case, "pleading that certain officials had actual authority is a legal conclusion that this Court is not bound to accept as true." *Id.* at 333–34 (citing *Iqbal*, 556 U.S. at 679); *see also Sahagun-Pelayo*, 602 F. App'x at 826 (quoting *Sahagun-Pelayo v. United States*, No. 13–929, 2014 WL 3643471, at *5 (Fed. Cl. July 22, 2014)) ("[E]ven if [plaintiff's] response . . . could be construed to include a statement alleging actual authority, 'such a bare statement would be a *mere legal conclusion* which would not be entitled to the favorable inferences of a factual allegation." (emphasis added)). Analogous to the allegations in *Marchena*, it is impossible to determine whether these unnamed "FBI agents and federal prosecutors" had actual authority because plaintiff did not identify them, nor did he identify their official roles. Although plaintiff named "Mike" and "Christian," two agents he worked with, plaintiff did not specifically name the agents he claims had actual contracting authority or would use good faith efforts to support a contract. Without naming or identifying the official roles of the government representatives who plaintiff claims had authority, plaintiff did not plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

   Plaintiff attempts to distinguish this case from *Marchena* by arguing this case involves a written agreement, whereas the plaintiff in *Marchena* alleged an oral agreement. Tr. at 12:23–13:1, ECF No. 22. The complaint contains allegations of the events leading up to the agreement, the meeting when the written agreement allegedly was signed, and the terms of the written agreement, but no further details or copies of the agreement. Compl. ¶¶ 19–27. Whether or not the agreement was written, however, does not change the requirement that the government representative who enters the agreement has actual contracting authority. *See Trauma Serv. Grp.*, 104 F.3d at 1325 ("A contract with the United States . . . requires that the Government representative who entered or ratified the [written] agreement had actual authority to bind the United States."); *cf. Brunner v. United States*, 70 Fed. Cl. 623, 647–48 (2006) (finding an enforceable contract between confidential informant plaintiff and the government for payment of monthly salary where the DEA Resident Agent in Charge had actual contracting authority). Plaintiff did not name or identify "[t]he FBI agents and federal prosecutors who were signatory parties to the agreement with Plaintiff, and/or authorized and/or ratified said agreement." Compl. ¶ 61. Therefore, accepting as true that a meeting took place at the FBI Phoenix office, where a written agreement was signed, plaintiff failed to plausibly allege any government official who signed the agreement had authority to use good faith best efforts to apply for an award, or had actual contracting authority.[5] *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

---

[5] The Court notes that during the 20 September 2019 status conference, plaintiff claimed, "the head of the office of the FBI in Phoenix was [at the alleged meeting]," who would have had authority to contract. Tr. at 20:6–7. When the Court asked counsel for plaintiff where in the complaint this fact was alleged, *see id.* at 21:2–20, 25:6–7, counsel for plaintiff responded by stating "a representative of the U.S. Department of Justice" was the "managing federal official" with contracting authority present at the meeting. *Id.* at 25:7, 25:9. The Court asked which agency this official represented, *id.* at 25:16–19, to which counsel for plaintiff responded plaintiff "was advised that the necessary federal prosecutors within the Department of Justice were responsible for this investigation," and "all this should have been stated with greater clarity." *Id.* at 25:24 –26:2, 26:4–5. These allegations are similar to paragraph 22 of the complaint, where plaintiff alleges he "was specifically advised that the necessary federal prosecutors within the U.S. Dept. Of Justice who were responsible for this investigation had approved the contract with Plaintiff on the terms that had previously been verbally outlined for him." Notably, these allegations do not state someone who attended the FBI meeting had authority to enter the contract, nor do they name a particular individual whose job duties involve contracting authority.

("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"); *Marchena*, 128 Fed. Cl. at 334 (finding vague allegations that unnamed government officials had authority implausible where plaintiff did not name or identify official roles).

Plaintiff further alleges he "met at the FBI's offices in Phoenix with several agents and governmental representatives, Mike, Christian,[6] a representative of the U.S. Dept. of Justice, 'Rebecca' (another federal agent), and Mark Brnovich, who was identified as the Director of the Arizona Department of Gaming." Compl. ¶ 23. First, as an Arizona state official, Mark Brnovich could not have actual contracting authority to bind the United States. *See Marchena*, 128 Fed. Cl. at 334 (clarifying that state law enforcement officials cannot have actual authority to bind the United States to contract). Next, stating first names of agents and vague descriptions such as "another federal agent" are similar to the "vague" allegations of authority in *Marchena*. *See id.* The only federal officials who plaintiff alleges were at the meeting, then, were "a representative of the U.S. Dept. of Justice" and "Mike," an FBI field agent. Compl. ¶ 23. Neither person has a last name, title, or any other substantive identifier in the allegation to demonstrate their purported ability to bind the government to contract. *Cf. Brunner*, 70 Fed. Cl. at 647–48 (finding, before *Iqbal* pleading standard, an enforceable contract between confidential informant plaintiff and the government for payment of monthly salary where the DEA Resident Agent in Charge had actual contracting authority). The Supreme Court explained in *Iqbal*, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability," such as the allegations at issue in this case, "it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). To the extent plaintiff claims "a representative of the U.S. Dept. of Justice" and "Mike" had authority to enter the contract, plaintiff failed to plead "enough factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570); *see also Sahagun-Pelayo*, 602 F. App'x at 825 ("[N]owhere in the complaint . . . is a specific individual [with contracting authority] identified as having represented the United States in negotiating the alleged confidential informant contract.").

Further, plaintiff maintains his reliance on the government officials' representations of authority or approval supports his allegations of a contract. Plaintiff alleges he "was specifically advised that the necessary federal prosecutors within the U.S. Dept. of Justice who were responsible for this investigation had approved the contract with Plaintiff on the terms that had previously been verbally outlined for him." *Id.* ¶ 22. In response to the government's motion to dismiss, plaintiff argues "Government agents" told him "they had been given express authority to contract with him," which was "reasonably relied upon by Plaintiff." Pl.'s Resp. at 8. Plaintiff accordingly asks the Court to accept as true "the agents and/or DOJ attorneys present stated that

---

[6] Plaintiff ambiguously identified Christian as "another law enforcement agent located in California." Compl. ¶ 12. Exhibit A to plaintiff's response to the government's motion to dismiss—which the Court does not consider for the purposes of resolving this motion—clarifies Christian's official role as Special Agent at the California Department of Justice, Division of Gambling Control. *See* Pl.'s Resp., Ex. A. Therefore, to the extent plaintiff claims Christian had authority to contract on behalf of the United States, he could not because he was not an employee of the federal government. *See Sahagun-Pelayo*, 602 F. App'x at 824 n.2 (quoting *Sahagun-Pelayo*, 2014 WL 3643471, at *1 n.4) (reviewing trial court's consideration of "plaintiff's response brief as an informal clarification of the statement of the claims presented in the complaint"); *Marchena*, 128 Fed. Cl. at 334 (clarifying that a state law enforcement officer could not have actual authority to bind the United States to contract).

they had the necessary authorizations from DOJ officials with authority to enter into such an agreement." *Id.* at 9. The Federal Circuit has held "[c]ontractors dealing with the United States must inform themselves of a representative's authority and the limits of that authority." *Harbert/Lummus Agrifuels Projects*, 142 F.3d at 1432; *see also Johnson v. United States*, 15 Cl. Ct. 169, 174 (1988) (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63 (1984); *Fed. Crop. Ins. Corp. v. Merrill*, 332 U.S. at 384; *Thanet Corp. v. United States*, 591 F.2d 629, 635 (Ct. Cl. 1979); *Hazeltine Corp. v. United States*, 10 Cl. Ct. 417, 440 (1986), *aff'd*, 820 F.2d 1190 (Fed. Cir. 1987)) ("[A] party contracting with the government cannot rely upon apparent authority but instead has the burden of knowing the law and ascertaining whether the one purporting to contract for the government is staying within the bounds of his or her authority."). Accordingly, plaintiff bore the burden of independently verifying whether the government agents who signed the alleged contract had the authority they allegedly represented. *See id.* Assuming the "FBI agents and/or DOJ attorneys" claimed they were indeed authorized to enter the agreement— which the Court does for the purposes of ruling on this motion—simply because the agents allegedly represented to plaintiff they had authorization does not mean they did. Plaintiff's reliance on the FBI agents' representations of approval or authorization therefore does not bear on the authority issue. As the Federal Circuit has stated, the fact that plaintiff "may have believed that the [contracting officer] had authority is irrelevant." *Harbert/Lummus Agrifuels Projects*, 142 F.3d at 1432; *see also Sahagun-Pelayo*, 602 F. App'x at 825 ("[T]o the extent [plaintiff] *believed* that an unidentified government official . . . possessed the authority to enter into a contract with him, that subjective belief is insufficient because *actual* authority—not just *apparent* authority—is required to contract." (emphasis in original)).

      The government argues plaintiff failed to state a claim because plaintiff did not plausibly allege the government signatories to the alleged agreement had either express or implied contracting authority. Plaintiff cites to the 2001 Attorney General's Guidelines Regarding The Use Of Confidential Informants ("Guidelines")[7] and the statutes governing the Asset Forfeiture Fund, 28 U.S.C. § 524 and 31 U.S.C. § 9705, but does not indicate which sections of either provide FBI agents authority to enter the alleged contract. Indeed, the instructions outlined in the Guidelines explicitly state the government "cannot guarantee any rewards, payments, or other compensation" to confidential informants. Attorney General Reno's Confidential Informant Guidelines § II.C.2.d, https://www.justice.gov/archives/ag/attorney-general-renos-confidential-informant-guidelines-january-8-2001 (Jan. 8, 2001) [hereinafter "Guidelines," as cited by plaintiff at Compl. ¶¶ 59–60]. Plaintiff did not allege a provision in "the Constitution, a statute, or a regulation" granted the government representatives authority "in unambiguous terms," as is required to plausibly allege express authority. *McAfee*, 46 Fed. Cl. at 435; *cf. Marchena*, 128 Fed. Cl. at 334 n.4 ("Though Marchena's Counsel stated at Oral Argument that AUSAs have the express actual authority to bind the Government in situations like this one, there are no allegations in the Proposed Amended Complaint that explain the basis for such authority, and

---

[7] Specifically, plaintiff alleges the Guidelines "recognized that the Government may pay monies to a [confidential informant] 'in the form of fees and rewards' as long as those payments 'shall be commensurate with the value . . . of the information that he or she provided or the assistance he or she rendered' to the relevant federal agency." Compl. ¶ 59. Additionally, plaintiff alleges the Guidelines "note that monetary payments to a [confidential informant] need not necessarily be made in one lump-sum payment, but could take the form of annual payments or some other pay-out plan." *Id.* ¶ 60. Section I.H of the Guidelines state, "[n]othing in these Guidelines is intended to create or does create an enforceable legal right or private right of action by a [confidential informant] or any other person." Thus, to the extent plaintiff relies on these Guidelines as authorization for payment, they cannot provide a basis for relief.

Marchena also has not shown a source of authority in his briefing."). Plaintiff therefore did not plausibly allege under *Iqbal* the "FBI agents and federal prosecutors" or "higher-ups" had express authority to contract because "[t]hat type of [informant contracting] authority is beyond the authority of the specific individuals identified in the complaint." *Sahagun-Pelayo*, 2014 WL 3643471, at *6, *aff'd*, 602 F. App'x 822 (Fed. Cir. 2015).

Any authority the "FBI agents and federal prosecutors" had must therefore be implied. Plaintiff, however, does not allege contracting with informants was an integral part of any of the individuals' job duties, as is required to demonstrate implied authority. *E.g.*, *Liberty Ammunition, Inc.*, 835 F.3d at 1402 (quoting *H. Landau & Co.*, 886 F.2d at 324) ("An employee of the Government has implied actual authority to enter an agreement only when that authority is an 'integral part of the duties assigned to [the] government employee.'"); *see also Sahagun-Pelayo*, 602 F. App'x at 825–26 (quoting *H. Landau & Co.*, 886 F.2d at 324) ("Nor is there any indication that entering into agreements is an 'integral part of the duties assigned' to any of those [unidentified government officials]."). Additionally, as stated earlier, this Court has found in multiple cases, "contracting authority is not an integral part of the duties of federal law enforcement officers when dealing with confidential informants or cooperating witnesses since such officers can obtain authority from higher-ranking officers via established procedures to pay informants and witnesses for their services, with the result that contracting authority is not needed for the agents to perform their jobs." *Gary v. United States*, 67 Fed. Cl. 202, 214 (2005); *see also, e.g.*, *Roy*, 38 Fed. Cl. at 190 (1997) ("Because contracting authority is not integral to FBI [Special Agents'] informant responsibilities, the doctrine of implied actual authority is inapplicable to the facts of the case at bar."). Plaintiff consequently cannot claim FBI agents had implied authority to contract. *See Doe v. United States*, 58 Fed. Cl. 479, 485 (2003), *aff'd*, 112 F. App'x 54 (Fed. Cir. 2004) ("[T]he authority to make payments for awards, information, or expenses does not include a delegation to contract on behalf of the Government.").

Plaintiff argues because the FBI made payments to him, "[i]t is reasonable . . . to assume that these same Government agents and representatives . . . also obtained the necessary approvals from their DOJ superiors to make the representation and agreement with Plaintiff that DOJ would, in fact, make a good faith recommendation of an award to Plaintiff at the conclusion of the investigation." Pl.'s Resp. at 13. By the same logic, plaintiff argues because the FBI paid him "in the range of $2500 to $25,000, it is reasonable to assume that they must have been made consistent with Guidelines III.B.3-5, which means that they must have been authorized by a 'Senior Field Manager.'" *Id.* at 11. Indeed, the Guidelines plaintiff cites in his complaint provide: "[m]onies that a [Department of Justice Law Enforcement Agency ("JLEA")] pays to a [confidential informant ("CI")] in the form of fees and rewards shall be commensurate with the value . . . of the information he or she provided or the assistance he or she rendered to that JLEA." Guidelines § III.B.1. The Guidelines further state, "[a] single payment of between $2,500 and $25,000 per case to a CI must be authorized, at a minimum, by a JLEA's Senior Field Manager." *Id.* § III.B.3. The government responds to this argument by noting these provisions in the Guidelines "do[] not discuss contractual authority." Def.'s Mot. at 12. Discussing these Guideline provisions, the government explains, "[a] discretionary payment, the amount of which is to be determined at the sole discretion of the agency commensurate with the value of the information obtained after services are rendered or expenses have been accrued, is distinct from a contract, which would legally bind the law enforcement agency and the [confidential human

13

source] to certain express obligations in advance of the services being rendered or the expense being accrued." *Id.* at 12–13. The government additionally highlights, "the Guidelines make clear that payment authority does not lie with FBI special agents." *Id.* at 13 (citing Guidelines § III.B.3–5); *cf. Doe v. United States*, 58 Fed. Cl. 479, 485 (2003), *aff'd*, 112 F. App'x 54 (Fed. Cir. 2004) ("[T]he authority to make payments for awards, information, or expenses does not include a delegation to contract on behalf of the Government."). Therefore, to the extent plaintiff claims a government representative must have authorized the payments he received, that purported authorization has no bearing on whether government representatives had authority to enter into the alleged contract at issue in this case.

Lastly, considering the FBI procedure for contracting with confidential informants, the Court notes potential for concern due to the recurring trend in a growing line of confidential informant breach of contract cases. That is, FBI special agents allegedly promise compensation to informants, but when informants sue the government for breach of these alleged promises, these cases are often dismissed pursuant to RCFC 12 or decided in favor of the government on summary judgment due to the agents' lack of contracting authority, which the Federal Circuit regularly affirms. *See, e.g.*, *Sahagun-Pelayo*, 602 F. App'x at 825–26 (affirming trial court's grant of government's motion to dismiss where plaintiff alleged verbal agreement with federal agents, but did not specify which individual(s) or agency would provide payment and protection in exchange for informant services, nor did plaintiff allege any government agent had authority to enter the alleged agreement); *Aboo v. United States*, 347 F. App'x 581, 582–83 (Fed. Cir. 2009) (affirming trial court's grant of the government's summary judgment motion where plaintiff did not produce evidence that any government agent had actual authority to authorize a $750,000 payment as alleged); *Salles*, 156 F.3d at 1383–84 (affirming trial court's grant of the government's summary judgment motion because the government officials did not have express or implied contracting authority, despite plaintiff's allegation that she was orally promised 25% of assets forfeited); *Doe*, 100 F.3d at 1584–85 (affirming trial court's grant of the government's summary judgment motion because plaintiff did not produce evidence that Customs agents or AUSA had actual authority, despite allegedly promising plaintiff payment in exchange for information); *Marchena v. United States*, 702 F. App'x 988, 988 (Fed. Cir. 2017) (Rule 36 Summary Affirmance of trial court's grant of government's motion to dismiss for failure to state a claim where plaintiff only alleged "superiors and other Government agents" had actual authority to enter and ratify the alleged contract). This Court has similarly decided numerous other confidential informant cases.[8] In the 20 September 2019 status conference, the Court asked

---

[8] The following is a non-exhaustive list of other similarly-decided confidential informant breach of contract cases from this Court resolved in favor of the government. *See, e.g.*, *Cornejo-Ortega v. United States*, 61 Fed. Cl. 371, 374–76 (2004) (granting the government's converted summary judgment motion despite allegations government agents promised plaintiff $2.2 million in exchange for information leading to the arrest of a top fugitive because plaintiff did not submit evidence showing the agents had actual authority to contract); *Tracy v. United States*, 55 Fed. Cl. 679, 682–84 (2003) (granting the government's summary judgment motion because, despite alleging DEA agents orally promised plaintiff compensation in exchange for information, plaintiff did not submit evidence showing any of the DEA agents had actual authority to contract); *Humlen v. United States*, 49 Fed. Cl. 497, 504 (2001) (granting the government's summary judgment motion, despite the existence of a duly-authorized written contract with the FBI, because plaintiff claimed breach of oral agreement, but plaintiff did not produce evidence showing the FBI agents who made oral compensation promises had actual authority to contract); *Toranzo-Claure v. United States*, 48 Fed. Cl. 581, 583–84 (2001) (granting the government's summary judgment motion because, despite proving $69,640 of total payments for informant services, plaintiff did not prove the DEA agents he worked with had actual authority to contract); *Doe v. United States*, 48 Fed. Cl. 495, 501–03 (2000) (granting the

counsel for the government whether under current FBI procedure, FBI field agents can make promises to informants all day long, and none will be binding on the government due to their lack of contracting authority. Tr. at 24:10–13. Counsel for the government confirmed this concerning implication of current FBI procedure. *Id.* at 24:14. The Court is concerned federal law enforcement agents may be making promises to vulnerable informants who are not aware those promises are unenforceable under this line of cases. The Court trusts these cases are merely anomalies—as opposed to a normal law enforcement procedure—and, in the future, law enforcement policy may better limit the risk of field agents making representations that could be confused as binding contracts.

Nevertheless, plaintiff's complaint fails to plausibly allege any of the government officials with whom plaintiff worked or who participated in the FBI meeting had express or implied authority to bind the United States to contract. Plaintiff's complaint consequently fails to state a claim for breach of contract.[9]

### V. Conclusion

For the reasons set forth above, defendant's motion to dismiss for failure to state a claim is **GRANTED**. The Court does not reach defendant's motion for summary judgment in the alternative. The action is hereby DISMISSED without prejudice. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

government's summary judgment motion because, despite the existence of a DEA Cooperation Agreement, plaintiff did not submit evidence showing the DEA agents whom plaintiff worked with had actual authority to contract, nor did a contracting officer ratify the agreement); *Khairallah v. United States*, 43 Fed. Cl. 57, 61–64 (1999) (granting the government's summary judgment motion because plaintiff did not produce evidence to show the DEA agents he worked with had actual authority to contract, nor that anyone with actual authority ratified the alleged agreement to pay plaintiff 25% of assets forfeited due to his informant work); *Roy*, 38 Fed. Cl. at 191–92 (granting the government's summary judgment motion because although the FBI paid plaintiff $100,000 according to the alleged contract, plaintiff did not produce evidence showing any of the FBI agents he worked with had actual authority to contract); *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 63 (1996) (granting the government's summary judgment motion because DEA regulations precluded field agents from having actual authority to contract, so the DEA agents plaintiff worked with could not have had implied contracting authority); *see also SGS-92-X003 v. United States*, 85 Fed. Cl. 678, 702–06 (2009) (finding after trial that the DEA Assistant Special Agent in Charge did not have authority to promise in advance specified percentages of forfeiture awards to confidential informant). *But see Brunner v. United States*, 70 Fed. Cl. 623, 643, 647–48 (2006) (before *Twombly* and *Iqbal*, finding an enforceable contract existed between plaintiff and the government where DEA Resident-Agent-in-Charge had implied authority to contract and authorized salary payments to plaintiff because the authority to approve payments to informants implicitly included the authority to contract for such payments).

[9] Since the Court finds plaintiff did not plausibly allege a contract with the United States, plaintiff also failed to plausibly allege the government breached the implied duty of good faith and fair dealing. *See Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) ("[B]ecause the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed.").